## OSHKOSH MFG. CO. v. KOEHRING MACH. CO.

(Circuit Court of Appeals, Seventh Circuit. October 1, 1918. Rehearing Denied November 19, 1918.)

### No. 2547.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—CONCRETE MIXER.
   Patent No. 899,414, for combinations in a concrete mixer, in view of the Mik German patent, No. 36,807, for lime-slacking apparatus, the arts being analogous, *held*, if valid, limited to a machine as specifically described, and not infringed.

2. PATENTS ☞328—ANTICIPATION—CONCRETE DISTRIBUTOR.
   Reissue patent No. 13,617, for concrete distributor, *held* anticipated by machines on sale more than two years before filing of application for original patent.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Bill by the Koehring Machine Company against the Oshkosh Manufacturing Company for infringement of patents. From a decree for plaintiff, defendant appeals. Reversed and remanded, with directions.

Stephen J. Cox, of New York City, and Arthur L. Morsell and Louis O. French, both of Milwaukee, Wis., for appellant.

John F. Robb, of Cleveland, Ohio, for appellee.

Before BAKER and MACK, Circuit Judges.

MACK, Circuit Judge. Two patents are involved in this appeal—the one, No. 899,414, for improvements in concrete mixer; the other, reissue No. 13,617, for improvements in concrete distributors. The machine in controversy is a combined concrete mixing and paving machine, called a paver; the alleged infringements result from the form of appellant's mixer and from the construction of the distributing attachment thereto. The two patents will be considered separately; the questions arising as to each of them are different.

### The Concrete Mixer.

[1] The two claims of the patent, both of which were held valid and infringed, are as follows:

1. In a concrete mixer, the combination of a revoluble drum having separate receiving and discharge openings at its respective ends, a stationary hopper

having its discharge end within one of the openings of said drum, arms connected with the drum supporting frame and projecting into the drum at its discharge end, a reversely inclinable trough pivoted to the inner ends of said arms, and means for manually changing the inclination of said trough upon its pivotal support.

2. In a concrete mixer, the combination of a revoluble drum having separate receiving and discharge openings at its respective ends, a stationary hopper, having its discharge end within one of the openings of said drum, a stationary trough supported from the exterior near the opposite end of said drums, arms connected with the drum supporting frame and projecting into the drum at its discharge end only, and a reversely inclinable trough pivoted to the inner ends of said arms and adapted to contact with said stationary trough.

The following statement from appellee's brief suggests the issue:

"Discharge chutes, operating practically outside of the drum, but adapted to be swung into the drum in order to perform their discharge function, were quite old in the art. At any rate, the patentee of patent No. 899,414 evolved the conception that a simple mounting of the chute further within the drum of a batch mixer type machine and using it in its idle position to shoot or cataract the materials back from the discharge end to (not merely toward) the inlet end, would create an active function for the chute as a mixing element when it was not needed for discharge purposes. In other words, appellee's discharge chute never has an idle position when the mixer is in use. The appellee recognizes that, while the patentee achieved a broadly new result in designing his double functioning chute, such result was derived from what might be characterized as a rather narrow structural change, namely, the shifting inwards of the pivotal support of the chute and reshaping and formation of the latter to accommodate for its new double action. In fact, throughout the procurement of his patent the patentee fully appreciated that, while the structural changes made by him over prior art devices were quite narrow ones, nevertheless, the accomplishment was maintained as wholly novel and an important advance in the art. His chief difficulty was to couch in proper terms claims which avoided many and various prior patents, and yet actually covered the real inventive idea developed by him."

Concededly, defendant's reversibly inclinable trough, though performing both the functions of discharging from and of aiding in the mixing of the materials within the drum, is not pivoted to the inner ends of the arms, and the arms do not project into the drum. Therefore, if the patent claims are to be literally interpreted, there is no infringement.

In view of our conclusions as to the Mik German patent, No. 36,-807, we do not pass upon appellant's strong and earnest contention that the successively narrowing amendments of the claims, made to meet the examiner's references to earlier patents, not including, however, Mik, compel such an interpretation; for the conception, if novel, of utilizing the reverse discharge chute in co-operation with the elevating buckets to aid the mixing within the drum, might, nevertheless, justify an interpretation of the claims broad enough to cover defendant's structure. Despite the change in the location of the pivoted support from within the drum to the opening thereof, defendant's reversed discharge chute does function as a mixing element, even though other advantages alleged to result from the location within the drum are thereby lost.

Is, then, this conception novel? In its application to concrete mixers, yes; to other apparatus in a strictly analogous art, no. For, in

our judgment, Mik in his patent for lime-slaking apparatus clearly shows the same double function of a discharge chute.

It is immaterial that concrete could not be mixed in Mik's machine, or that the primary function of his discharge chute, when in reversed position, is to aid in separating the stony impurities from the lime. This separation is but a step in the more thorough mixing of the quicklime and the water which have been fed into the drum.

Both patents are classified in the Patent Office as mortar mixers; in both machines, thorough agitation of the materials is essential; in both, the mixture is lifted upwards by the buckets or straining basket, and on reaching its highest point is dropped into the reversed chute, whence it is cataracted back. In the concrete mixture, the aim is thoroughly to mix all of the material; none of it runs off after it is mixed; the whole mass is discharged through the chute. In the lime-slaking apparatus, the object is thoroughly to saturate the quicklime, producing slaked lime, which is strained through and flows out of the drum beneath the reversed chute. After these stony substances have been mixed as thoroughly as possible with the liquid into which they drop from the reversed chute, and thereby to a very large extent have cast off the lime surrounding them, they are discharged as waste material through the discharge chute; as some lime, however, still adheres to them, they drop into a receptacle having a straining bottom, so that any lime passing out with the stones may be caught and mixed with the slaked lime. The arts are clearly analogous.

The patent in suit, therefore, if valid, must be limited to a machine as specifically described in the claims; so limited, it is not infringed.

## The Concrete Distributor.

[2] As stated in the specifications, the object of the invention was—

"to provide a device to be used in laying walks and street pavements in connection with a concrete mixer for receiving the mixed concrete as it is discharged from the mixing drum and conveying it to the place of deposit in the walk or pavement which is being laid."

### Claim 1 reads as follows:

"1. In a device of the described class, the combination of a vertical frame, a boom pivotally supported near one end from said frame, manually actuated means for revolving said boom a partial revolution about its pivotal support, a track carried by the boom, a carriage mounted upon said track, a cable operating along said boom and connected with the carriage, a receptacle suspended from said carriage, means for communicating a forward and backward movement to said carriage, and means carried by the boom for raising and lowering the same."

This claim corrects obvious errors in the corresponding ones of the original patent by substituting "boom" for "crane" and in stating that the "manually actuated means" are to revolve the boom, not the frame.

The other claims in issue, 3 to 6, had no corresponding ones in the original patent; they differ from claim 1 as follows: In each of them, the means for revolving the boom are not limited to those manually actuated; in claims 4 and 6 the means for raising and lowering the boom are not limited by locating them on the boom; in claim 5 this ele-

ment is omitted altogether; and in claim 6, these means are stated to be operatively connected with the outer end of the boom. Furthermore, in claim 4 the cable is omitted and the shape of the carriage is specifically described; in claim 5 a new element, drums on the upper and lower portions of the frame, is added; in claim 6, in addition to these drums, there is also added pulleys at the inner and outer ends of the boom, to carry the cables.

Plaintiff was no pioneer. Such distributing machines were old in the art. He introduced no new elements. Without discussing the details of the prior art, it is apparent therefrom that plaintiff's claims are to be given no wide range of equivalency. We pass, however, the question of infringement.

We pass, too, appellant's contentions as to the validity of the reissue, as well as to the limitation of the claims to the specific structure, based upon the proceedings in the Patent Office. We note, too, that any defense of prior public use was waived by objection to the relevancy of plaintiff's offer to carry his invention back of such use. But there was no waiver of the separate defense that such machines were on sale more than two years before application for the original patent was filed. Two such actual sales were clearly proven; contemporaneous records substantiate the oral testimony. It is immaterial whether or when these machines were put into actual public use; that they were so used more than two years prior to the original application seems, however, equally clear.

If defendant's machine should be deemed to infringe, then these machines so sold must be held to anticipate.

The decree will be reversed, and the cause remanded, with directions to dismiss the bill.

NOTE.—Judge KOHLSAAT concurred in the decision, but died before the opinion was prepared.